# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> v. <br> EDWIN ANYAOKU, <br> *Defendant.* | Case No. 1:18cr270 <br> Hon. Liam O'Grady |

## MEMORANDUM OPINION

The Court heard oral argument on the Defendant's Motion to Dismiss, Dkt. 31, on October 25, 2019. Having considered the briefs and arguments, this Court denied Defendant's motion. Dkt. 37.

Defendant moved to dismiss the indictment on the grounds of lack of jurisdiction and improper venue. Defendant's jurisdiction argument is centered on the manufactured jurisdiction doctrine. He argues that the government manufactured jurisdiction here first because he was not predisposed to import drugs into the United States and was thus entrapped. Second, he argues that the government initiated and thus manufactured the essential intent element of the crime.[1] Defendant's venue argument holds that he should not be prosecuted in this District because no essential conduct elements of the charged counts occurred here.

---

[1] Defendant also argues that application of the extraterritorial jurisdiction statute in this case violates due process. This argument fails and due process is satisfied because Defendant knowingly and voluntarily participated in a conspiracy targeting American commerce. *See United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) ("For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests."). A potential heroin trafficker will reasonably understand that conduct to be criminal, and can expect to be brought before U.S. courts for prosecution.

## I. Jurisdiction

The manufactured jurisdiction doctrine "prohibits the government from "manipulat[ing] events to create federal jurisdiction over a case." *United States v. Davis*, 855 F.3d 587, 589 (4th Cir.), *cert. denied*, 138 S. Ct. 268, 199 L. Ed. 2d 172 (2017) (quoting *United States v. Al-Talib*, 55 F.3d 923, 929 (4th Cir. 1995)). The doctrine has been applied to prevent the government from "creat[ing] a federal crime out of a state crime" where "the *only* reason the sole jurisdictional link occurred [] was that it was contrived by the government for that reason alone." *United States v. Coates*, 949 F.2d 104, 106 (4th Cir. 1991) (emphasis in original) (citing *United States v. Brantley*, 777 F.2d 159, 163 (4th Cir. 1985)).

In this Circuit, however, courts do not "operate from the premise that the government's actions were presumptively improper." *United States v. Brinkman*, 739 F.2d 977, 982 (4th Cir. 1984). Therefore, "the manufactured jurisdiction doctrine comes into play *only* when there is evidence to support it." *Davis*, 855 F.3d at 592 (emphasis in original). The Fourth Circuit has repeatedly declined to presume the government acts with the improper purpose of contriving jurisdiction, even in suspicious circumstances, when evidence of an improper purpose is absent. *See, e.g. id.* (use of text message implicating interstate commerce did not manufacture jurisdiction); *Brinkman*, 739 F.2d at 982 (declining to "assume that there was no legitimate explanation underlying" a government agent's choice to meet 100 yards over a state border); *United States v. Cooper*, 1995 WL 44654, *1 (4th Cir. 1995) (no manufactured jurisdiction when the defendant "could not show that the only reason" for a drug deal occurring across state lines was to establish a federal crime); *United States v. Hillary*, 1988 WL 118652, *3 (4th Cir. 1988) (no manufactured jurisdiction when there was "no evidence in the record from which to conclude the interstate travel or communications were specifically manufactured to create federal

jurisdiction"). Here, as in those cases, Defendant has failed to point to any evidence which would indicate that the government manufactured jurisdiction for the sole purpose of creating a jurisdictional link.

Moreover, Defendants arguments also fail because he engaged in voluntary acts demonstrating a predisposition and intent after the government initially introduced New York as a potential target of the importation conspiracy. Defendant argues that the government manufactured jurisdiction here, and that gives rise to both an entrapment and intent defense. The first argument is that the government's manufactured jurisdiction induced Defendant to engage in a federal crime, and that the government is unable to show he was predisposed to do so.

"To establish entrapment, a defendant must first demonstrate the government induced him to engage in the criminal activity. Once the defendant has shown government inducement, the burden shifts to the government to prove beyond a reasonable doubt the defendant's predisposition to have engaged in the criminal conduct." *United States v. Young*, 916 F.3d 368, 375–76 (4th Cir. 2019), *cert. denied*, No. 18-1443, 2019 WL 4921376 (U.S. Oct. 7, 2019) (internal citations and quotation marks omitted). The issue in this case is whether Defendant was predisposed to these crimes. "Predisposition focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Id.* at 376.

The second argument is that the government has failed to show intent, because it was the government which initially offered Defendant that element of the crime. Similar to the predisposition analysis, Defendant's unproven-intent theory must fail if Defendant demonstrated the requisite intent after the government initiated that element. *See United States v. Al Kassar*, 660 F.3d 108, 120 (2d Cir. 2011).

Here, Defendant's conduct after the government raised New York as a potential place for importation demonstrates his continued voluntary participation in the conspiracy, and thus both arguments fail. Beyond mere continued participation, Defendant introduced new ideas to the conspiracy. His offers, such as involving his son, allocation of profits, and traveling to the United States to collect, are significant participation and overt acts by which he participated in and availed himself of the opportunity to commit the crime.

## 2. Venue

The federal venue statute for extraterritorial offenses provides, in relevant part, that "[t]he trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender ... is arrested or is first brought." 18 U.S.C. § 3238. "[T]he text of the statute focuses on the offense, establishing clear directions as to where venue for a specific offense is proper." *United States v. Holmes*, 670 F.3d 586, 594 (4th Cir. 2012).

Defendant has been charged with violating, *inter alia*, 21 U.S.C. § 959. That statute explicitly provides that it was intended "to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States." 21 U.S.C. § 959(d). Defendant was arrested in South Africa, then extradited to the United States. He arrived in Dulles, Virginia, on June 21, 2019, and was arrested.

The alleged violation of § 959, as well as the alleged conspiracy, were complete outside the territorial jurisdiction of the United States. Although Defendant was originally arrested in South Africa, he was brought first into the Eastern District of Virginia. Pursuant to the federal venue statue for extraterritorial offenses, proper venue lies in the Eastern District of Virginia.

Accordingly, the Court finds that Defendant was not entrapped for purposes of this

Motion to Dismiss, but Defendant may raise that defense later in these proceedings with appropriate evidence. The Court further finds that Defendant brought external information and initiative to the conspiracy which is sufficient to overcome his intent argument. The Court further finds that the venue statute at issue here is clear, and gives the government both the right and responsibility to bring this case in the district where the Defendant was first brought when, as here, no other overt acts took place within the United States. For those reasons, this Court's October 25, 2019 Order, Dkt. 37, denied Defendant's Motion to Dismiss the Indictment, Dkt. 31.

October 29, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge