IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:18-CR-270 |
| EDWIN ANYAOKU, a.k.a. "Mark," | |
| *Defendant.* | |

**STATEMENT OF FACTS**

The United States and the defendant, Edwin Anyaoku, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

1. From in and around 2017 through in and around June 2018, within the jurisdiction of the Eastern District of Virginia, in South Africa, and elsewhere, the defendant, Edwin Anyaoku, a.k.a. "Mark," did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with others, known and unknown, to unlawfully, knowingly and intentionally distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, knowing or intending or having reasonable cause to believe it would be imported into the United States, in violation of Title 21, United States Code, Sections 963, 960(a), and 959(a).

2. During the course and in furtherance of the conspiracy, the defendant was personally involved in the distribution of, or it was reasonably foreseeable to the defendant that his co-conspirators distributed in furtherance of the conspiracy, at least 30 kilograms but less than 90 kilograms of a mixture and substance containing a detectable amount of heroin.

3. In 2017, a heroin trafficker in Belgium introduced a confidential source ("CS") working on behalf of the DEA to the defendant as one of the Belgium-based trafficker's criminal associates. In October 2017, the CS called the defendant to tell him that the CS was making arrangements to travel to Johannesburg, South Africa, where the defendant resided, in order to purchase heroin from the defendant.

4. In early 2017, the CS reached out to the defendant and asked if the defendant would have "chocolate" (code for heroin) for the CS when he came to Johannesburg to meet; the defendant confirmed that he would. The CS reached out again several days later, at which time the CS and the defendant agreed that the cost per kilogram would be $15,000 in U.S. currency.

5. On December 19, 2017, the defendant met with the CS and told him that the heroin would be ready the next day. In the same conversation, the CS told the defendant that the heroin would travel through Suriname and ultimately be imported into the United States in New York. Thereafter, the CS told the defendant that he (the defendant) could invest in a subsequent, larger load of heroin, which could be sold for $60,000 per kilogram in New York. The defendant responded that he would "love" that. The defendant confirmed that his sources could supply larger quantities of heroin for subsequent purchases.

6. In the same conversation, the CS and the defendant continued to discuss a larger, subsequent load of heroin, and the CS told the defendant that the CS could either bring the proceeds to the defendant in Johannesburg, or give the proceeds to any associates the defendant might have in the United States. The defendant told the CS that he (the defendant) had a nephew in America who could receive proceeds; the defendant also offered to fly to the United States to receive proceeds.

7. On December 20, 2017, the defendant distributed just over one kilogram of heroin to the CS in exchange for $15,000, the agreed-upon price. The defendant gave the CS back $200 as an apology for the delay.

8. In January 2018, the CS and the defendant negotiated prices for a pending deal for a larger amount of heroin that ultimately materialized in June 2018.

9. In early June 2018, the CS reached out to the defendant again to tell him that the CS would be coming back to Johannesburg later that month with enough money to buy 27 kilograms of heroin. The two agreed to meet again on June 19.

10. On June 19, 2018, the CS met the defendant at a hotel in Johannesburg around lunchtime. The defendant advised that he would bring a total of 29 kilograms of heroin, and that two of the kilograms would belong to the defendant as his investment.

11. The CS and the defendant negotiated a price of $14,000 per kilogram for 27 kilograms. The CS agreed to sell the defendant's personal two kilograms for $67,000 each in New York, and charge the defendant $9,000 per kilogram for a transportation fee; thus, the defendant expected to realize a personal profit in the sale.

12. At around 4:00 pm on June 19, the defendant and his two accomplices showed up to the hotel with all 29 kilograms of heroin, which the defendant intended to be imported into the United States through New York. Thereafter, the defendant was arrested.

13. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

14. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

15. If the defendant breaches the plea agreement, then pursuant to the plea agreement, he waives any rights under Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the statement of facts in any such proceeding.

                Respectfully submitted,

                G. Zachary Terwilliger
                United States Attorney

By: _____
      Katherine E. Rumbaugh
      Assistant United States Attorney

**Defendant's signature:** After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, EDWIN ANYAOKU, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial the United States would have proved the same beyond a reasonable doubt.

Date: 11/27/19

Edwin Anyaoku
Defendant

**Defense counsel signature:** I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 11/21/19

Elizabeth A. Mullin, Esq.
Attorney for the Defendant