IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:18-CR-270 |
| v. | The Hon. Liam O'Grady |
| EDWIN ANYAOKU,<br>a.k.a. "Mark," | Sentencing: March 20, 2020 |
| *Defendant*. | |

## GOVERNMENT'S POSITION ON SENTENCING

The defendant, Edwin Anyaoku, comes before the Court for sentencing after pleading guilty to one count of conspiracy to distribute, and distribution of, one kilogram or more of heroin, knowing or intending or having reasonable cause to believe that it would be imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960, and 963. The United States has no objection to the Probation Officer's calculations of the defendant's Guidelines, as set forth in the Presentence Investigation Report (PSR) in paragraphs 30–40 and Part D.  Further, the United States agrees that the defendant has assisted authorities in the prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.  The Probation Officer has already accounted for this one-level decrease in its Guidelines calculation.  PSR ¶ 39.

The United States respectfully submits that a sentence of no more than 108 months' imprisonment—the bottom of the applicable Guidelines range—is appropriate in this case.

**BACKGROUND**

This case arises out of a Drug Enforcement Administration (DEA) investigation into heroin traffickers in Africa and Europe. In that part of the world, heroin typically originates in Pakistan or Afghanistan, then travels south through the southern part of Africa before being smuggled elsewhere around the world. This investigation involved the use of a confidential source (CS) who was at all times acting at the direction and under the supervision of DEA agents.

In 2017, the CS was in communication with a heroin trafficker living in Belgium. During this time, the trafficker in Belgium introduced the CS to the defendant as one of the Belgium-based trafficker's criminal associates. In October 2017, the CS called the defendant to tell him that the CS was making arrangements to travel to Johannesburg, where the defendant resided, in order to purchase heroin from the defendant.

In early December 2017, the CS reached out to the defendant and asked if the defendant would have "chocolate" (code for heroin) for the CS when he came to Johannesburg to meet; the defendant confirmed that he would. The CS reached out again several days later, at which time the CS and the defendant agreed that the cost per kilogram would be $15,000 in U.S. currency.

On December 16, 2017, the CS told the defendant that the CS would be in Johannesburg on Friday (December 19), and would have the money to purchase heroin. The defendant told the CS that he would be ready.

On December 19, the defendant met with the CS and told him that the heroin would be ready the next day. It was at that point that the CS told the defendant that the heroin would travel through Suriname and ultimately be imported into the United States in New York. Thereafter, the CS told the defendant that he (the defendant) could invest in a subsequent, larger load of heroin,

2

which could be sold for $60,000 per kilogram in New York. The defendant responded that he would "love" that. The defendant confirmed that his sources could supply larger quantities of heroin for subsequent purchases.

In the same conversation, the defendant assured the CS that the heroin was of good quality, and the two continued to discuss a subsequent load of heroin. The CS told the defendant that, if the defendant wanted to invest in a future load, the CS could either bring the proceeds to the defendant in Johannesburg or give the proceeds to any associates the defendant might have in the United States. The CS even offered to bring drug proceeds to Colombia or Brazil, but the defendant cut him off and said no, the defendant had "a nephew in America. He can go anywhere." The CS responded, "Oh, okay. So I give it to him over there [in the United States]," and the defendant responded, "Yeah, yeah, I fly out and come there."

The following day, the defendant provided the CS with just over one kilogram of heroin in exchange for $15,000, the agreed-upon price. The defendant gave the CS back $200 as an apology for the delay.

In January 2018, the CS called the defendant again and told him that the CS was gathering money for a purchase of 23 to 24 kilograms of cocaine. The defendant and the CS negotiated prices for a pending deal, which ultimately materialized in June 2018.

In early June 2018, the CS reached out to the defendant again to tell him that the CS would be coming back to Johannesburg later that month with enough money to buy 27 kilograms of heroin. The two agreed to meet again on June 19.

On June 19, 2018, the CS met the defendant at a hotel in Johannesburg around lunchtime. The defendant advised that he would bring a total of 29 kilograms of heroin, and that two of the

3

kilograms would belong to the defendant as his investment. During the conversation, the following exchange occurred:

> CS: So they're gonna bring the stuff [heroin], everything they're going to bring it to Sierra Leone. From Sierra Leone will bring it to Conakry [Guinea] because Conakry has direct containers to…
>
> Defendant: To U.S.A.
>
> CS: To New York. Yeah.

The CS agreed to pay the defendant $14,000 per kilogram for the 27 kilograms. The CS agreed to sell the defendant's personal two kilograms for $67,000 each in New York, and charge the defendant $9,000 per kilogram for a transportation fee. The defendant agreed to bring the heroin to the same hotel later that afternoon, around 4:00 pm.

Then, around 4:00 pm, as the defendant and the CS had planned, the defendant and his two accomplices showed up to the hotel with all 29 kilograms of heroin, which the defendant intended to be imported into the United States through New York. The defendant was arrested by South African authorities and detained pending extradition proceedings.

On June 21, 2019, following extradition, the defendant made his initial appearance in the Eastern District of Virginia. On December 6, 2019, the defendant pleaded guilty to Counts One and Two of the indictment: one count of conspiracy, and one substantive count of distribution of heroin for the purposes of importation to the United States.

## SENTENCING ANALYSIS

**I. Law**

The Court consults both the Sentencing Guidelines and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account

when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution. 18 U.S.C. § 3553(a).

## II. Guidelines Calculation

As is the case with almost all drug offenses, the Guidelines are driven by the applicable drug weight. The base offense level is 66, as stipulated in the plea agreement. PSR ¶¶ 7, 31. The United States further agrees that the defendant is safety-valve eligible and accordingly, is entitled to a two-level reduction under U.S.S.G. § 2D1.1(b)(18). PSR ¶ 32.

Further, the government concurs with the Probation Officer's application of the two-level reduction for acceptance of responsibility under § 3E1.1(a), and in accordance with the plea agreement, hereby moves for the additional one-point reduction under § 3E1.1(b). The defendant's total offense level of 31 and criminal history category I yields an advisory Guidelines range of 108–135 months. PSR Part D.

### III. Section 3553(a) Analysis

Although it is true that the defendant and his conspirators never sent heroin directly into the United States, it is important in this case to understand the seriousness of the offense, and to account for the need to send a message of general deterrence. The sentence imposed on this defendant should send a clear message of deterrence to those who would seek to target the United States for importation of wholesale quantities of controlled substances — in particular, Schedule I narcotics that have ravaged this country with the rise of drug abuse, addiction, and overdose.

The sentence imposed on this defendant should also reflect the nature and circumstances of this offense. The defendant was not a mere participant in this conspiracy, but instead played a key role in the southeast Asian and African heroin supply chain, by brokering the distribution of wholesale quantities of heroin to be smuggled through South Africa. When the CS told the defendant that he would send the heroin to New York, the defendant expressed no hesitation or concern whatsoever. Instead, the defendant said he would "love" to invest in a load of heroin going to the United States, and told the CS that he had a family member who could receive drug proceeds. Even when the CS offered to send proceeds to South America, the defendant cut him off and said that he (the defendant) would travel to the United States to receive them. And then,

without much apparent effort, the defendant was able to get his hands on 30 kilograms of heroin – up to 300,000 individual doses.   A significant term of imprisonment is warranted.

## CONCLUSION

Accordingly, the United States submits that a term of imprisonment of no more than 108 months is sufficient but not greater than necessary to satisfy the sentencing factors under Section 3553.

                              Respectfully submitted,

                              G. Zachary Terwilliger
                              United States Attorney

By:        /s/
                Katherine E. Rumbaugh
                Assistant United States Attorney

## CERTIFICATE OF SERVICE

    I hereby certify that on March 13, 2020, I filed the foregoing electronically using the CM/ECF system, which will automatically send a notification of such filing to all counsel of record. I will further forward an electronic copy to the United States Probation Officer assigned to the case.

                                            /s/
                                  Katherine E. Rumbaugh
                                  Assistant United States Attorney
                                  Eastern District of Virginia
                                  2100 Jamieson Avenue
                                  Alexandria, Virginia 22314
                                  Tel: (703) 299-3700
                                  Fax: (703) 299-3982
                                  katherine.rumbaugh@usdoj.gov